THE CINCINNATI SPECIALTY )
UNDERWRITERS INSURANCE )
COMPANY, )
          )
        Plaintiff, )
          )
v. )
          )    Case No. 4:26-cv-00075
CARDINAL CONTRACTORS, LLC, )
          )
and )
          )
SEAFOOD CITY, INC. )
          )
and )
          )
SIX FORTUNE, LLC, )
          )
        Defendants. )

## PLAINTIFF'S RESPONSE TO DEFENDANT
## SIX FORTUNE, LLC's MOTION TO DISMISS

COMES NOW Cincinnati Specialty Underwriters Insurance Company ("Cincinnati"), by and through undersigned counsel, and in Response to Defendant Six Fortune, LLC's ("Six Fortune") Motion to Dismiss, states as follows:

## INTRODUCTION

Six Fortune's Motion to Dismiss hinges on two arguments. First, Six Fortune argues that, because Cincinnati did not include information regarding each of the members of Six Fortune and Cardinal Contractors, LLC, respectively, that such exclusion is fatal and requires this Court to dismiss this action. Second, Six Fortune argues that Missouri requires declaratory judgment actions regarding insurance coverage to be tried in the same court as any underlying litigation and any failure to do so should require the federal court to dismiss the action. Both arguments are

without merit and should be rejected. The Federal Rules of Civil Procedure clearly prefer allowing a party to amend a Complaint rather than an outright dismissal. Moreover, Missouri caselaw does not require a declaratory judgment action to be tried in the same court as the underlying action. This Court should deny Six Fortune's Motion to Dismiss and allow this case to continue before this Court.

## ARGUMENT

**I.**     **Cincinnati's Alleged Lack of Pleading Regarding Complete Diversity Does Not Defeat This Action Because an Amended Petition Would Remedy Any Alleged Issue.**

In this matter, this Court has already filed several notices requesting disclosure statements that would provide information on the citizenship of the members of all party entities. As a result, Cincinnati will be able to amend any defective pleadings upon receipt of such information in the disclosure statements, if the Court believes such an amendment is warranted.

Courts should freely give leave to amend pleadings when justice so requires. Fed. R. Civ. P. 15(a)(2). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962). Because the underlying declaratory judgment action is properly brought before this Court and is subject to relief in this Court, the proper remedy in the event the initial Complaint filed by Cincinnati is deemed inadequate due to a lack of information regarding the individual citizenship of members of the entities in question would be the filing of an Amended Complaint outlining that jurisdiction is proper. Thus, if the Court does find that such exclusion does need to be remedied for this action to continue, Cincinnati respectfully requests the Court to allow Cincinnati to file an Amended Complaint in this matter rather than outright dismissal of the action as a whole.

**II.**    **Missouri law does not require that insurance coverage declaratory judgment actions be filed in the same court as an underlying action.**

Six Fortune misconstrues the holding of *McCrackin v. Mullen*, 701 S.W.3d 868, 877 (Mo. 2024) by arguing that any declaratory judgment action regarding insurance coverage applicable to an underlying action must be tried in the same court as the underlying action. Six Fortune relies solely on Footnote 11 of the *McCrackin* opinion, which is dicta, and merely advises that insurers file declaratory judgment actions in the same court as the underlying tort action. The footnote reads: "In the future, it is *advised* that insurers file the declaratory judgment action in the same court as the tort action whenever possible. Such practice will ensure coverage questions can be determined in a consistent manner to prevent unnecessary delay of the underlying tort action." *McCrackin*, 701 S.W.3d at 877, n.11 (Emphasis added). Notably, the *McCrackin* case involved an insurer's declaratory judgment action that was adjudicated in federal court while an underlying tort case proceeded in state court. Further, footnote 10 of *McCrackin* states:

> "To the extent any case suggests an insurer situated like Safeco does not have a right to intervene in an underlying tort action for the sole purpose of seeking a stay of the tort action while coverage is litigated in a *separate* declaratory judgment action, such cases should no longer be followed."

*Id.* at 876 n. 10 (emphasis added)

Footnote 10 rejects the notion that coverage questions must be, or even should be, adjudicated within the underlying tort case. In contrast, Footnote 11 is advisory dicta, not a holding. It suggests, for reasons of convenience, that insurers "file the declaratory judgment action in the same court as the tort action whenever possible." *Id.* at 877 n.11. (emphasis added). This advisory comment does not, and cannot, mandate that insurers litigate coverage in the same case file as the tort claims.

Federal courts applying *McCrackin* have recognized the non-binding nature of Footnote 11. For example, in *Golden Bear Ins. Co. v. Levee Bar & Grill, LLC*, 2025 WL 1415778, at *2 (W.D. Mo. May 15, 2025), the court cited *McCrackin* for the proposition that insurers should file a declaratory judgment action simultaneous with the tort action and seek a stay of the tort action, but it declined to adopt Footnote 11's "same court" suggestion. The court allowed the insurer's federal declaratory judgment action to proceed, notwithstanding the insured's argument that it should have been filed in state court. Additionally, in *State Auto. Mut. Ins. Co. v. Farley*, 2025 WL 2308110, at *2 (W.D. Mo. Aug. 11, 2025), the Court noted that the language found above in *McCrackin* was passive, and thus asserts "what might be considered a best practice compared to a mandatory obligation."

Here, Six Fortune's flawed interpretation of Footnote 11 as *requiring* the coverage dispute to be filed in the same action as the tort case is simply wrong. At most, Footnote 11 expresses a preference for the same forum, such as the same circuit court, not under the same docket number, and it certainly does not abrogate an insurer's statutory right to file in federal court when diversity jurisdiction exists. Cincinnati's Complaint for Declaratory Judgment properly invokes this Court's jurisdiction under 28 U.S.C. § 1332(a)(1) and 28 U.S.C. § 1391(b)(2) .

Thus, no requirement exists for Cincinnati to file this action in the underlying state court and such an argument cannot be the basis for dismissal.

III.     **The six *Scottsdale* factors weigh in favor of continuing Cincinnati's declaratory judgment action in this Court.**

Six Fortune then argues that the *Scottsdale* factors applied to this case warrant dismissal of Cincinnati's Complaint. Notably *Scottsdale* came into effect nearly 20 years before the *McCrackin* decision. Six Fortune does correctly note that the six factors are:

(1)     whether the declaratory judgment sought "will serve a useful purpose in clarifying and settling the legal relations in issue";

(2)     whether the declaratory judgment "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the [federal] proceeding";

(3)     "the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts";

(4)     "whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending";

(5)     "whether permitting the federal action to go forward would result in unnecessary 'entanglement' between the federal and state court systems, because of the presence of 'overlapping issues of fact or law'"; and

(6)     "whether the declaratory judgment action is being used merely as a device for 'procedural fencing'—that is, 'to provide another forum in a race for res judicata' or 'to achiev[e] a federal hearing in a case otherwise not removable.'"

*Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 998 (8th Cir. 2005). (quoting *Aetna Casualty & Surety Co. v. Ind-Com Electric Co.*, 139 F.3d 419, 422 (4th Cir. 1998)).

However, Six Fortune misapplies these factors in their argument. Six Fortune argues that the first and second factors would weigh equally in favor if the declaratory judgment action were filed in state court. However, nothing in the *Scottsdale* decision indicates that the factors are to be weighed against an imaginary declaratory judgment pleading that may have been filed in another court. Thus, any imagined and theoretical state court proceeding has no bearing on such an analysis. As such, as shown in *Scottsdale*, the only relevant inquiry is whether the declaratory judgment sought "will serve a useful purpose in clarifying and settling the legal relations in issue". *Id.*

As in *Scottsdale*, both factors one and two weigh against dismissing Cincinnati's Complaint for Declaratory Judgment. At present, Cincinnati is not a party to any of the underlying

state court proceedings. Cincinnati is seeking guidance on whether it has the duty to defend or indemnify an insured in those proceedings. Courts in Missouri have found that the purpose of declaratory judgment actions such as the one before the Court are to decide whether insurance companies have a duty to defend or indemnify their insured in state proceedings. *See State Auto. Mut. Ins. Co. v. Farley,* at *4. No such parallel action regarding such coverage questions exists in the underlying state actions. In fact, coverage is not an issue in any of the underlying state proceedings.

Six Fortune's only argument that these factors weigh towards dismissal is the argument that *McCrackin* requires this action to be filed in state court. *McCrackin* does not require this, as outlined above. As such, factors one and two weigh in favor of proceeding with the declaratory action to determine the duties of Cincinnati in defending or indemnifying its insured which will "serve a useful purpose" in determining Cincinnati's duties under the Policy and will "afford relief from uncertainty, insecurity and controversy" regarding the same.

Likewise, Six Fortune again misinterprets *McCrackin* to argue that factors three, four and five weigh in their favor. *McCrackin* does not, and cannot, require Cincinnati to file its declaratory judgment action in state court simply because litigation is pending there. As in *State Automobile Mutual Insurance Co.*, no court has previously been asked to determine the issue of coverage related to the underlying Plaintiff's claims in any related matter and Cincinnati has filed to stay the state proceeding until this Court determines such coverage issues. *See State Auto. Mut. Ins. Co. v. Farley*, at *5. The Court in *State Automobile Mutual Insurance Co.* found that because there were no issues of state laws that were pending before a state court, Missouri had no special interest in resolving a policy dispute that was properly before a federal court and therefore ruled that the third and fourth *Scottsdale* factors weighed in favor of continuing the declaratory judgment

proceeding. *Id.* The result should be the same in this matter. There is no underlying state petition regarding coverage issues. Cincinnati was not even a party at issue in the state proceedings. Therefore, the third and fourth factors also weigh towards proceeding with the declaratory judgment action in this Court.

Seafood City argues that the issues of fact in Cincinnati's Declaratory Judgment Complaint "directly overlap in the underlying state court case." However, Seafood City's examples of the contract between Cardinal and Weather-Tite, as well as property damages, are clearly not "directly overlap(ping)". Under Missouri law, an insurer's duty to defend is determined by comparing the language of the insurance policy with the allegations in the underlying complaint. *McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. 1999). A determination of whether an insurance company has a duty to defend is separate from determining whether any damages were caused or directly contributed to by the insured (in this case, Cardinal Contractors). *State Auto. Mut. Ins. Co. v. Farley* at 5.

In this instance, Six Fortune states that there needs to be a determination of the alleged contract between Weather-Tite and Cardinal in the underlying state proceedings, and any determination made by this Court regarding the contract will thus have an effect in those proceedings. However, Six Fortune ignores that the insurance policy at issue requires that Cardinal do the following for all contracts with contractors and subcontractors for coverage under the Policy.

> "As a condition to and for coverage to be provided by this policy, you must do all of the following:
>
> 1. Obtain a formal written contract with all independent contractors and subcontractors in force at the time of the injury or damage verifying valid Commercial General Liability Insurance written on an "occurrence" basis with Limits of Liability of at least:

a. $1,000,000 each "occurrence";

b. $2,000,000 general aggregate, per project basis; and

2. Obtain a formal written contract stating the independent contractors and subcontractors have agreed to defend, indemnify, and hold you harmless from any and all liability, loss, actions, costs, including attorney fees for any claim or lawsuit presented, arising from the negligent or intentional acts, errors or omissions of any independent contractor and subcontractor.

3. Verify in the contract that your independent contractors and subcontractors have named you as an additional insured on their Commercial General Liability Policy for damages because of "bodily injury"; "property damage", and "personal and advertising injury" arising out of or caused by any operations and completed operations of any independent contractor or subcontractor. Coverage provided to you by any independent contractor or subcontractor must be primary and must be provided by endorsement CG 20 10 (7/04) edition) and CG 20 37 (7/04 edition), or their equivalent. Completed operations coverage must be maintained for a minimum of two years after the completion of the formal written contract.

**This insurance will not apply to any loss, claim or "suit" for any liability or any damages arising out of operations or completed operations performed for you by any independent contractors or subcontractors unless all of the above conditions have been met."**

*See* Cincinnati's Declaratory Judgment Petition, Paragraph 14.

As such, the contractual requirements for Cardinal to receive indemnity or defense under the insurance policy are far different than they are for deeming whether Cardinal entered into a contract at all with Weather-Tite for purposes of liability to Six Fortune, or any other party in the underlying state litigation.

Further, Six Fortune makes the argument that because property damages are key issues of fact, any determination on the timing of those property damages would directly overlap with the material facts at issue in the underlying state court case. However, Six Fortune again does not point out any meaningful way of how the determination of whether damages occurred within the policy

period or how a determination of whether the damages in the underlying state litigation are covered under the Cincinnati policies, overlaps with the determination of damages potentially being caused by Cardinal at all. In reality, these are two separate determinations, and neither the determination of the timing of damages for coverage nor whether the damages are covered under any policies issued by Cincinnati is at issue in any underlying state proceeding. Thus, factor five also weighs in favor of allowing this declaratory judgment to proceed, as there would not be, and cannot be, any "unnecessary entanglement between the federal and state court systems" when such issues are not before two separate courts.

Six Fortune does not argue factor six in any meaningful way in their brief, instead only briefly stating that Cincinnati's decision to bring such an action in federal court "smacks of forum-shopping" in their Motion to Dismiss. However, Cincinnati points out again that there has been no determination of coverage in any court, thus Cincinnati could not be trying to avoid res judicata. Further, Cincinnati is not a party to any underlying state action and this action is clearly permissible in federal court as pled in Cincinnati's Declaratory Judgment Action, thus factor six also weighs in favor of continuing this declaratory judgment action in this Court.

## <u>CONCLUSION</u>

Jurisdiction is proper in federal court under 28 U.S.C. § 1332(a)(1) and 28 U.S.C. § 1391(b)(2). The decision in *McCrackin* does not, and cannot, require Cincinnati to file this declaratory judgment action in state court. Further, none of the *Scottsdale* factors weigh in favor of dismissing this declaratory judgment action and requiring Cincinnati to bring the action in state court. As such, Cincinnati respectfully requests that this Court denies Six Fortune's Motion to Dismiss, along with any further relief this Court deems proper.

Respectfully submitted,

LITCHFIELD CAVO LLP


By: */s/ Blaine P. Smith*
Blaine P. Smith    MO Bar # 74504
Michael L. Brown  MO Bar #55732
10401 Holmes Road, Suite 220
Kansas City, MO 64131
(816) 648-1400
(816) 648-1401 Fax
smithb@litchfieldcavo.com
brown@litchfieldcavo.com
ATTORNEYS FOR PLAINTIFF
THE CINCINNATI SPECIALTY
 UNDERWRITERS INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed using the Court's CM/ECF system on this 3rd day of April, 2026, which will send notice to all counsel of record.


*/s/ Blaine P. Smith*